IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| FRANCISCO RODRÍGUEZ REYES,<br><br>    Plaintiff,<br><br>         v.<br><br>BTB ASPHALT CORPORATION, et al,<br><br>    Defendants. | CIVIL NO. 14-1726 (MEL) |

**OPINION AND ORDER**

Pending before the court is co-defendants Christopher Concepción López and MAPFRE PRAICO Insurance Company's Motion to Dismiss for Lack of Subject Matter Jurisdiction. ECF No. 156. This matter concerns the domicile of a retired military serviceman who joined the Army out of Puerto Rico, lived in numerous other jurisdictions during his Army career, and then retired in Puerto Rico. For the reasons that follow, the Motion to Dismiss is granted.

I.   PROCEDURAL HISTORY

On September 25, 2014, Frankie Rodríguez Reyes ("Plaintiff") filed a complaint in this case, invoking the court's diversity jurisdiction on the grounds that the parties are from different states and the amount in controversy exceeds $75,000. Plaintiff amended his initial complaint on March 2, 2015. ECF No. 24. In both his original and his first amended complaint, Plaintiff lists his "residence and domicile" as "40 Liberty Woods Drive, Fort Stewart, Georgia 31315." ECF No. 1 and 24.

On August 24, 2016, co-defendants Christopher Concepción López and MAPFRE PRAICO Insurance Company filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction,

alleging that all of the parties in this litigation are domiciled in Puerto Rico. ECF No. 156. Co-defendants Curbelo & Rullán Consulting Engineers and third party defendants Universal Insurance Company and Cooperativa de Seguros Múltiples de Puerto Rico subsequently filed a motion (EFC No. 157) requesting to join Christopher Concepción López and MAPFRE PRAICO Insurance Company's Motion to Dismiss. On September 19, 2016, Plaintiff filed an Opposition to the Motion to Dismiss. ECF No. 178. In his Opposition to the Motion to Dismiss, Plaintiff contends that he is not domiciled in Puerto Rico, but rather Tennessee. The same day he filed his Opposition to the Motion to Dismiss, Plaintiff requested to amend the section of his complaint listing his domicile as Georgia to reflect his domicile as that of Tennessee. ECF No. 177. On December 5, 2016, the court held an evidentiary hearing to determine Plaintiff's domicile.

## II.   FACTUAL BACKGROUND

Plaintiff joined the Army in 1990 out of Puerto Rico, beginning a 25 year career of uninterrupted service with the Army. Pursuant to his service, Plaintiff lived in multiple states and countries. After initial training in Alabama and Georgia, the Army stationed Plaintiff in Germany for two and half years. In December of 1993, he returned to the United States for assignment at Fort Campbell, Kentucky, his duty station for the next four years. As a background matter, Fort Campbell's geography is somewhat unique: according to Plaintiff, Fort Campbell has a Kentucky mailing address; however, the base sits astride the border of Tennessee. Thus, part of Fort Campbell is in Kentucky, and the other part is in Tennessee.

Plaintiff's duty at Fort Campbell was his first long term duty station in the continental United States, and it was also during this time that he met his current wife, Argentina Rodríguez, at the end of 1993. From December 1993 until 1997, Plaintiff resided in the barracks on base at Fort Campbell. In February of 1997, he married Argentina, at which point he moved to her

apartment off base in nearby Clarksville, Tennessee. Plaintiff lived off base at Argentina's apartment in Tennessee approximately one year.

In 1998, Plaintiff left Tennessee for other assignments. After his departure in 1998, Plaintiff has never returned to live in Tennessee. After leaving Tennessee, Plaintiff served approximately three years in Italy, five years in North Carolina, three years in Germany, and six years in Georgia. Argentina lived with Plaintiff at each of these assignments, and continues to live with him at the present.

On March 9, 2014, Plaintiff's father passed away in Puerto Rico during events that gave rise to the instant case. ECF No. 24 ¶7. On September 25, 2014—while living in Georgia—Plaintiff filed the initial complaint in this case. Roughly eight months later—May 18, 2015—Plaintiff reached the de-facto date of his separation from the Army. The following month, he moved to Puerto Rico, where he has lived until the present. His formal discharge from the Army occurred on August 31, 2015.

### III. LEGAL STANDARD

Federal courts are courts of limited jurisdiction. See U.S. Const. Art. III, § 2 (enumerating the types of actions subject to the federal judicial power); Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinée, 456 U.S. 694, 701 (1982) ("Subject-matter jurisdiction . . . functions as a restriction on federal power, and contributes to the characterization of the federal sovereign."). Their power is strictly circumscribed by Article III of the Constitution and by statute. Lower federal courts may only preside over the specific types of actions that Congress has empowered them to adjudicate. See U.S. Const. Art. III, § 1; 28

U.S.C. §§ 1330-1369.  To invoke federal diversity jurisdiction, the controversy must be between citizens of different states[1] and involve a sum greater than $75,000.[2]  28 U.S.C. § 1332(a)(1).

Citizenship for diversity jurisdiction purposes is the state in which a party is domiciled. See, e.g., García Pérez v. Santaella, 364 F.3d 348, 350 (1st Cir. 2004). "A person's domicile is the place where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." Meléndez-García v. Sánchez, 629 F.3d 25, 41 (1st Cir. 2010) (internal quotation marks omitted). Domicile is distinct from the concept of "residence." Although "a person may have more than one residence, he can only have one domicile." Bank One, Texas, N.A. v. Montle, 964 F.2d 48, 53 (1st Cir. 1992) (internal citations ommitted) "There is a presumption in favor of continuing domicile." Id. at 50. To show change of domicile, a party must establish that he (1) was "present in the new domicile" and (2) "intend[ed] to remain there." Id.

Often, the determination of domicile is relatively simple. The instant case varies from the run of the mill diversity cases, however, because Plaintiff was a serviceman and as such was subject to temporary assignments for duty. Because service personnel often have no say in where they are stationed, the First Circuit has recognized an additional presumption regarding the domicile of service personnel:

> Service personnel are presumed not to acquire a new domicile when they are stationed in a place pursuant to orders; they retain the domicile they had at the time of entry into the services." 13E Charles A. Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 3617, at 607 (3d ed. 2009); *see also Chico v. P.R. Elec. Power Auth.,* 312 F.Supp.2d 153, 158 (D.P.R.2004); *Rosado–Marrero v. Hosp. San Pablo, Inc.,* 927 F.Supp. 576, 577 (D.P.R.1996); *Codagnone v. Perrin,* 351 F.Supp. 1126, 1129 (D.R.I.1972). A service member may, however, rebut this presumption by "demonstrat[ing] that despite his

---

[1] Puerto Rico is included within the definition of "state" for diversity jurisdiction purposes.  28 U.S.C. § 1332(e).

[2] The parties do not contest that the amount in controversy exceeds the jurisdictional amount.

4

> involuntary presence in a state, he or she has formed the intention to make a home in that state." 13E Wright et al., *supra,* § 3617, at 608–09. Such proof "requires clear and unequivocal evidence." *Id.* at 609; *see also Chico,* 312 F.Supp.2d at 158; *Rosado–Marrero,* 927 F.Supp. at 577; *Codagnone,* 351 F.Supp. at 1129.

Meléndez-García v. Sánchez, 629 F.3d 25, 41 (1st Cir. 2010)

In determining whether a party intended to make his home in a particular state, the following factors are relevant:

> the place where civil and political rights are exercised, taxes paid, real and personal property (such as furniture and automobiles) located, driver's and other licenses obtained, bank accounts maintained, location of club and church membership and places of business or employment. While no single factor is controlling, some courts have presumed domicile in a state is established where a party is registered to vote. This circuit, however has not recognized such a presumption, though it has said that the place a person is registered to vote is a weighty factor in determining domicile.

Id. (internal citations and quotations ommitted).

Whether a court has federal jurisdiction is determined by the facts in existence at the time the complaint is filed. Smith v. Sperling, 354 U.S. 91, 93 n.1 (1957); Señor Frog's, 632 F.3d at 34 ("diversity of citizenship is determined as of the time of suit"). Therefore, whether Plaintiff is a citizen of Puerto Rico or Tennessee depends on where he was domiciled on September 25, 2014, the date he filed his initial complaint in this case.

**IV.   ANALYSIS**

Because he enlisted in the army from Puerto Rico, the court begins with the presumption that Plaintiff was domiciled in Puerto Rico during his military career. To rebut this presumption, Plaintiff must present clear and unequivocal evidence that despite his involuntary presence in Tennessee, he intended to make Tennessee his home.[1]

---

[1] At the evidentiary hearing, Plaintiff relinquished the argument that he is domiciled in Georgia. Thus, the court's inquiry is limited to determining whether his domicile ever changed from Puerto Rico to Tennessee.

5

In favor of his Tennessee domicile, Plaintiff married his wife in Tennessee, lived off base there for one year, and maintained a bank account at the Fort Campbell Federal Credit Union from 1993 until 2004.[2] Also, around the time he arrived to Fort Campbell, Plaintiff requested Army Human Resources to change his "state of residency" to Tennessee.

> Q: Taxes—tell us about that
>
> A: Once I made it to Tennessee and I got my driver's license there and then I went to my human resources department to fill to fill the pertinent paperwork to change my state of residency, and that became my tax place.

Hrg. at 10:06 am.

Plaintiff also maintained a Tennessee driver's license from December 1993 until January 2015, and continued to register his cars online to Tennessee, even after he was residing in Georgia and North Carolina.

Although he was under orders to serve at Fort Campbell, Plaintiff evinced some preference for Fort Campbell over other duty stations. Between 1993 and 1994 when Plaintiff reenlisted, the Army allowed him to rank order an Army-provided list of three duty stations. The Army indicated it would consider but not guarantee his preference, and Plaintiff ranked Fort Campbell first out the three options he was provided. Nevertheless, once he was granted his preference, he knew that regardless of whether he liked Fort Campbell, he could not leave.

Lastly, at the December 5, 2016, evidentiary hearing, Plaintiff indicated his intent was to return to Tennessee after retiring.

> Q: At the time you left Tennessee, what were your plans, your future plans, in terms of the place of where you intended to live?

---

[2] Plaintiff stated in his Unsworn Declaration Under Penalty of Perjury that he lived off base in Tennessee from July of 1995 until February of 1998. Plaintiff's Exhibit 5 ¶ 5(e). However, he testified at the December 5, 2016, evidentiary hearing that he "legally" resided in the barracks at Fort Campbell until he married his wife Argentina in February of 1997 (Hrg. at 11:39 am), at which point he lost his room in the barracks. Although he testified that he would sleep over at Argentina's apartment when he and Argentina were boyfriend and girlfriend, the court finds that Plaintiff's residence from December 1993 until February 1997 was the barracks at Fort Campbell.

> A: My plans in the military was always to return back to Tennessee, once, you know, I could get there.

Hrg. at 10:10 am.

> Q: You mentioned that you wanted to return or to move to Tennessee because you liked the community because there was a lot of Latinos, right?
>
> A: Well, and I also fell in love with the place and considered it my, my home.

Hrg. at 10:15 am.

Although these factors support the theory that Plaintiff intended to make his home in Tennessee, none are conclusive. The circumstances of Plaintiff's Tennessee marriage do not evince a longstanding commitment to the State. At the time of the marriage, his wife Argentina had been living in Tennessee three and a half years. She had three children at the time she married Plaintiff; however, two of those children were already adults. The eldest was living in Georgia, and the middle child was serving in the Marine Corps somewhere outside of Tennessee. Only Argentina's youngest child, 17 years old at the time, was living in Tennessee at the time of the marriage. See Hrg. at 11:02 am.

Although courts have found that raising minor children in a state is evidence supporting intent to make a home in that state (see Ferrara v. Ibach, 285 F. Supp. 1017, 1020 (D.S.C. 1968)), parents are generally not bound by the location of their adult children. Indeed, subsequent events shed light on the strength of Plaintiff's ties to Tennessee: just one year after his marriage to Argentina, he left Tennessee and never returned there to live.

Perhaps more persuasive is Plaintiff's request to change his "state of residency" to Tennessee. It is not clear, however, whether Plaintiff requested this change for financial reasons or because he intended to make Tennessee his home. Plaintiff testified that Tennessee has no state income tax; however he did acknowledge that North Carolina and Georgia impose an

income tax. Hrg. at 11:42 am. He also stated that he filed an income tax return in Puerto Rico in 1993, prior to changing his residency to Tennessee. Plaintiff's Exhibit 5 at ¶6.[3] Plaintiff denied his reason for requesting to change his "state of residency" was Tennessee's lack of an income tax; however, his self-serving statement is subject to skepticism.

Plaintiff requested to change his "state of residency" to Tennessee between 1993 and 1994, roughly three years before he married his wife. The timing of his request—early in his tenure at Fort Campbell; prior to his family ties in Tennessee—raises doubt the change was done out of an intent to make Tennessee his home. It also appears that Plaintiff made no great effort to change his "state of residency" when his address had changed back to Puerto Rico. Plaintiff's W-2 Wage and Tax statement for the year 2015 lists his mailing address in Puerto Rico, but in a separate box, identifies his state as Tennessee. Defendant's Exhibit A.[4] Plaintiff also submitted a "Defense Finance and Accounting Service Military Leave and Earning Statement" covering the period of August 1st through 31st of 2015, his last month in the Military. ECF No. 178-4. The form indicates that Plaintiff's state of residency for tax purposes is Tennessee. Notably, Plaintiff was living in Puerto Rico at the time, having moved in June of 2015. Lastly, after the evidentiary hearing, Plaintiff submitted a blank DD Form 2058, arguing that such form would have been the one that Plaintiff filled out when he requested to change his residency in 1993-1994. Even if the court entertains Plaintiff's argument that the DD Form 2058 is the same one that he used to request his change in residency, the form states that its purpose is for "determining the State for which income taxes are to be withheld from your wages. . . ." This casts doubt on Plaintiff's denial that he requested to change his "state of residency" because Tennessee has no income tax.

---

[3] For clarity of the record, exhibits introduced at the December 5, 2016, evidentiary hearing are referred to by their original numbering/lettering.
[4] Personal identifying information has been redacted.

Plaintiff contends that Tennessee became Plaintiff's new domicile when he changed his "tax home," pursuant to DD Form 2058 (ECF No. 265), however the same form cautions that certain steps must be taken to change the state of residence/domicile, including "(1) registering to vote; (2) purchasing residential property or an unimproved residential lot; (3) titling and registering your automobile(s); (4) notifying the State of your previous legal residence/domicile of the change in your State of legal residence/domicile; and (5) preparing a new last will and testament which indicates your new State of Legal residence/domicile." The form further cautions that "[g]enerally unless these steps have been taken, it is doubtful that your State of legal residence/domicile has changed." ECF No. 265-1.

Although Plaintiff has registered his automobiles in Tennessee, he has not submitted evidence that he otherwise complied with the recommended steps in DD Form 2058. Under these circumstances, the mere fact of claiming a new state for withholding state income taxes from military pay does not itself constitute a change in domicile. See Rosado-Marrero by Rosado-Cancel v. Hosp. San Pablo, Inc., 927 F. Supp. 576, 578 (D.P.R. 1996) (finding that military member had not overcome the presumption of continuing domicile where he had submitted a DD Form 2058, but completed only one of the five steps recommended in the form).

Plaintiff's longstanding Tennessee driver's license and his practice of obtaining Tennessee vehicle registration supports the theory of Tennessee domicile; however these too can be interpreted in two ways: either he truly viewed Tennessee as his home; or, he was trying to be consistent with what he already told the military was his residency for tax purposes.

Lastly, Fort Campbell's geographic ambiguity somewhat reduces the inference that Plaintiff intended to make his home in Tennessee. Place of employment is a relevant factor in determining domicile; however, it is not clear whether Plaintiff was reporting for work in

Kentucky or Tennessee, nor is it clear whether Plaintiff's residence in the barracks was on the Kentucky or Tennessee side of the border.

On the other hand, the presumption of "continuing domicile" in Puerto Rico is reinforced by the following facts. Plaintiff was under military orders the entire time he resided in Tennessee; and roughly one month after separating from the Army, he moved to Puerto Rico. He provided no evidence of any concrete steps to live in Tennessee after 1998 apart from a six month 2014 lease agreement for an apartment in Tennessee, which is not signed by him, does not list him as an occupant, and concerns a unit in which he has never lived.[5] He presented no evidence that he ever requested the Army to reassign him to Tennessee after he left in 1998. Since he retired from the Army, he has not even returned to Tennessee for a visit. Ultimately, his assertion that he always intended to return to Tennessee after retiring is not credible in light of his actions after leaving Tennessee. "A party's own declarations concerning his domicile, as is true of any self-serving statement, are subject to judicial skepticism. They are awarded little weigh when in conflict with the facts" Rosado-Marrero by Rosado-Cancel v. Hosp. San Pablo, Inc., 927 F. Supp. 576, 578 (D.P.R. 1996) (citing 13B Wright, Miller & Cooper § 3612 at 532).

---

[5] At the December 5, 2016, evidentiary hearing, Plaintiff submitted a March 5, 2014, lease agreement for a property in Tennessee. The proffered agreement was unsigned; however, the court admitted the agreement contingent upon submission of the original signed copy within seven days. The day of the deadline, Plaintiff purported to submit a signed copy of the agreement; however a defense motion to strike correctly pointed out that the newly submitted agreement was dated August 28, 2016, and covered a unit not listed in the March 5, 2014, lease agreement. After the court's deadline, Plaintiff submitted the signed March 5, 2014, lease agreement. ECF No. 264-1. Even if the court takes the pertinent agreement into consideration, it warrants little weight. First, the term of the lease is only six months. Second, the agreement is signed by Plaintiff's wife and his stepdaughter, but not by Plaintiff. He is not listed in the agreement as one of the persons who will occupy the unit, and has never lived in said unit. The primary occupant of the unit is Plaintiff's step daughter. Argentina testified that she signed the agreement because she and Plaintiff wanted to move back to Tennessee and they decided it would be good for her to stay with her daughter so she could look for a house. Hrg. at 2:08 pm. On cross examination, however, Plaintiff agreed that part of the reason his wife appears in the agreement is because he and his wife helped his stepdaughter with living expenses. Hrg. at 10:31 am. Argentina never lived at the unit more than a combined three or four months; and while she was staying there, she never looked for any houses or apartments to purchase. Hrg. at 2:09 pm. Lastly, Plaintiff's testimony that he leased said unit (Hrg. at 10:02 am) exists in tension with his November 29, 2016, Unsworn Declaration Under Penalty of Perjury. Plaintiff was asked whether he ever rented any real estate properties, and if so, provide the property's address. ECF No. 247 ¶11. Plaintiff provided a list of properties, none of which had a Tennessee address. Plaintiff's Exhibit 5 ¶11. A reasonable inference can be drawn that the lease in question was never a manifestation of Plaintiff's intention to move back to Tennessee, but rather a way of helping his stepdaughter with living expenses.

The only place Plaintiff has ever registered to vote is Puerto Rico. Plaintiff's mother and siblings reside in Puerto Rico, and Plaintiff presented no evidence his parents and siblings resided away from Puerto Rico when he was serving at Fort Campbell. Throughout his military tenure, Plaintiff took his vacations in Puerto Rico. After 1998, he split his vacations equally between Puerto Rico and Tennessee. Plaintiff opened a bank account in Puerto Rico in the mid to late 1990's—approximately during the period he was living in Tennessee. He closed his Fort Campbell Credit Union Account in 2004; however, the Puerto Rico account he opened in the mid to late 1990s is still open at the present. Plaintiff has never joined any religious organization or club. Although it is no surprise he did not pay income taxes in Tennessee, he presented no evidence of paying any other kind of tax in Tennessee, apart from the fees he paid to register his cars there. Plaintiff has never owned any real estate in Tennessee, nor has he personally leased any real estate in Tennessee.

Plaintiff's own pleadings give reason to doubt he intended to live in Tennessee after retirement. On September 25, 2014, Plaintiff in his initial complaint claimed a domicile of Georgia. On March 2, 2015, he amended his complaint, and again listed a Georgia domicile. Only when confronted with a motion to dismiss in 2016 did he request to amend his domicile to Tennessee.

Plaintiff explained that his plans to return to Tennessee began to change when his father passed away in March of 2014. He testified that after his father passed away, he decided that his mother would need more help; and towards 2015, plans became more concrete that he and his wife "were going to come [to Puerto Rico] for an extended or indefinite time and maybe permanent." Hrg. at 10:32 am. Although Plaintiff's intention to help his mother appears genuine,

the same is not inconsistent with an earlier desire to return to Puerto Rico which became somewhat stronger when his father passed away.

His vehicle registration sheds some light on his prior feelings toward Puerto Rico. A certificate of Tennessee vehicle registration renewal issued on March 14, 2014, shows that Plaintiff's vehicle license number is "BAYAMON," which is the Puerto Rico municipality where he resided prior to joining the military. Plaintiff's Exhibit 3. The document's character as a "renewal" supports the reasonable inference Plaintiff had the same vanity plates in 2013, prior to the period he argues his plans toward Puerto Rico began to change. Although honoring your hometown with vanity plates does not necessarily prove intent to live there, it does show some evidence of continuing ties to Puerto Rico.

The court recognizes that the record contains some evidence pointing toward domicile in Tennessee, namely, Plaintiff's request to change his "state of residency," the Tennessee driver's license he maintained from 1993 until 2015, obtaining Tennessee vehicle registration, his Tennessee marriage, and living off base in Tennessee. On the other hand, Plaintiff testified his plan was to return to Tennessee; however, since his retirement, he has only lived in Puerto Rico. He was under military orders the entire time he lived in Tennessee, and the only evidence he submitted of any concrete step he took to live there after 1998 is a six month 2014 Tennessee lease agreement which is not signed by him and does not list him as an occupant. He never owned or personally leased any real estate in Tennessee; he presented no evidence of paying any taxes in Tennessee apart from his vehicle registration fees, and the only place he has ever registered to vote is Puerto Rico. Finally, he himself stated his domicile is not Tennessee but Georgia—in both his initial and his fist amended complaint—and only when confronted with a motion to dismiss did he claim a domicile in Tennessee.

The record falls short of complying with the requirement of "clear and unequivocal evidence." Since Plaintiff has failed to rebut by "clear and unequivocal evidence" the presumption of continuing Puerto Rican domicile, there is no diversity jurisdiction. For the foregoing reasons, the Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 156) is GRANTED, and the case is DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED

In San Juan, Puerto Rico, this 19th day of December, 2016.

<u>s/Marcos E. López</u><br>
U.S. Magistrate Judge